178 P.3d 1190

**STATE of Arizona, Appellant,**

v.

**Kati Louise QUINN, Appellee.**

**No. 1 CA–CR 05–1123.**

Court of Appeals of Arizona,
Division 1, Department A.

March 25, 2008.

Review Denied Oct. 28, 2008.

**68**

Andrew P. Thomas, Maricopa County Attorney, By James P. Beene, Deputy County Attorney, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender, By Margaret M. Green, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

SNOW, Judge.

¶ 1 The State of Arizona appeals the trial court's grant of Kati Louise Quinn's motion to suppress blood evidence taken from her after an auto accident. For the reasons that follow, we affirm the trial court's determination that Arizona Revised Statutes ("A.R.S.") section 28–673 (2001) does not authorize the use of blood evidence in a criminal prosecution when that evidence was taken from a defendant driver without a warrant in the absence of probable cause that the driver was under the influence. We thus affirm the trial court's suppression of the results of Quinn's blood draw.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 There is no dispute as to the underlying facts. On February 25, 2004, "several minutes before midnight," Quinn drove her vehicle east-bound in the west-bound lanes of Glendale Avenue at a high rate of speed and collided head-on with a vehicle traveling in the west-bound lanes. The collision resulted in serious physical injuries that required that Quinn and the other driver be hospitalized. Quinn was rendered unconscious and did not regain consciousness until after surgery.

¶ 3 As preparations were being made to take Quinn into surgery, a law enforcement officer instructed the hospital to draw a sample of Quinn's blood pursuant to A.R.S. § 28–673. Consequently, while Quinn was still unconscious, a nurse drew blood from her

arm, and the officer took immediate possession of the entire sample. The blood tested positive for a variety of drugs, including methamphetamine, cocaine and morphine. Quinn subsequently was charged with aggravated assault pursuant to A.R.S. § 13–1204(A)(1) (2001). Prior to her trial on these charges, Quinn filed a motion to suppress the results of the blood draw.

¶ 4 At the suppression hearing the State stipulated that Quinn was not under arrest at the time the sample was taken, and no evidence provided probable cause to believe that Quinn might have been impaired. The State further conceded that the blood sample was drawn only because the officer requested it, and not for any medical purpose. The record does not establish that Quinn had been issued a citation for violating any traffic law that night.

¶ 5 The trial court ruled that pursuant to the Fourth Amendment, § 28–673 could not authorize "a blood test of operators of motor vehicles involved in a traffic accident resulting in serious injuries or fatalities, [without a] determination of probable cause that the driver was impaired." The State filed a timely appeal. We have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1) (2003).

### DISCUSSION

**I. The State Stipulated That There Was No Probable Cause to Believe That Quinn Was Under the Influence.**

¶ 6 Normally, because any forced extraction of blood by the State invades one's expectation of privacy in bodily integrity, the intrusion is subject to the requirements of the Fourth Amendment. *State v. Jones*, 203 Ariz. 1, 9, ¶ 27, 49 P.3d 273, 281 (2002); *see also Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). As *Schmerber* explains, the State's unconsented-to search of a person's blood requires probable cause to believe that the search will reveal the presence of controlled or intoxicating substances. 384 U.S. at 768–71, 86 S.Ct. 1826. The *Schmerber* Court stated that:

> [t] he interests in human dignity and privacy which the Fourth Amendment

protects forbid any [ ] intrusions [into a person's blood] on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear....

*Id.* at 769–70, 86 S.Ct. 1826.

■ ¶ 7 Thus, with the exception of § 28–673, Arizona's statutes which authorize warrantless blood draws from drivers require the existence of probable cause that a driver is impaired before his or her blood may be taken. *See, e.g.*, A.R.S. § 28–1321 (2001) (providing implied consent for a blood draw only if the driver is first arrested for a DUI offense); *Campbell v. Superior Court In and For Maricopa County*, 106 Ariz. 542, 553–54, 479 P.2d 685, 696–97 (1971) (holding that a blood draw pursuant to DUI implied consent law requires probable cause); A.R.S. § 28–1388(E) (1999) (permitting a law enforcement officer who has probable cause to believe a suspect has violated the DUI statute to request a portion of that person's blood drawn by medical personnel for a medical purpose)[1] ; *State v. Estrada*, 209 Ariz. 287, 289–90, ¶ 9, 100 P.3d 452, 454–55 (App.2004) (holding that probable cause is a required element for the medical blood draw exception).

■ ¶ 8 By stipulating that Quinn was not placed under arrest for DUI, that her blood was not drawn for a medical purpose, and that the State did not have probable cause to believe she was driving under the influence of controlled or intoxicating substances, the State cannot justify the blood draw based on A.R.S. §§ 28–1321, 28–1388(E), or other common law authority. It is thus obliged to rely on § 28–673 in arguing the blood evidence should have been admitted in Quinn's criminal prosecution.

■ ¶ 9 Section 28–673, rather than requiring probable cause to believe that a person was driving under the influence before a driver's blood may be taken, requires probable cause to believe that the driver caused a motor vehicle accident that resulted in serious physical injury.[2]

■ ¶ 10 Probable cause under § 28–673 is not the same as probable cause to believe that a driver was under the influence of controlled or intoxicating substances. *See McDuff v. State*, 763 So.2d 850, 855 (Miss. 2000) (holding that "the tragic fact that a fatality arises out of a motor vehicle accident is in no way, standing alone, an indicator that alcohol or drugs were involved"). A driver whose vision is obscured by the setting sun may rear-end another vehicle in which, unfortunately, one of the occupants receives an injury that qualifies as "serious" under the statutory definition.[3] While meeting the elements of the statute, such circumstances without more would not give rise to probable cause to believe that the driver causing the accident was impaired.[4] On the other hand, probable cause may exist to believe that a driver was under the influence when a driver, whose conduct is otherwise unexplained, drives her vehicle late at night at a high rate of speed eastbound in traffic lanes dedicated

1. The requirement that blood be drawn by medical personnel for medical purposes was stated in *State v. Cocio*, 147 Ariz. 277, 284, 709 P.2d 1336, 1345 (1985).

2. Section 28–673(A) provides:
   [a] person who operates a motor vehicle within this state gives consent to a test or tests of the person's blood, breath, urine or other bodily substance for the purposes of determining alcohol concentration or drug content if the person is involved in a traffic accident resulting in death or serious physical injury as defined in § 13–105 and a law enforcement officer has probable cause to believe that the person caused the accident or the person is issued a citation for a violation of [various provisions of the title].

3. "Serious physical injury" as defined by A.R.S. § 13–105(34) (2001), and incorporated into A.R.S. § 28–673, "includes physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb."

4. To avoid confusion, when we use the term "probable cause" in the balance of this opinion, unless otherwise indicated, we refer to probable cause to believe the driver was under the influence rather than probable cause to believe that the driver caused an accident that resulted in serious physical injury.

to westbound traffic and hits another vehicle causing serious physical injuries. But, even in such a case, it is possible that other circumstances would negate probable cause to believe that the driver was impaired.

¶ 11 It is the State's burden to establish the admissibility of blood tests it seeks to introduce in a criminal prosecution. *See, e.g., Fuenning v. Superior Court In and For Maricopa County,* 139 Ariz. 590, 602–03, 680 P.2d 121, 133–34 (1983) (vacating DUI conviction due to court's error in admitting intoxilyzer test results when state had not established the foundational requirements for the test's admission). Thus, the State has both the prerogative and the responsibility of selecting the grounds on which it seeks to establish the admissibility of the test.

¶ 12 In this case, the State did not assert at the trial court, nor does it argue on appeal, that there was probable cause to believe that a search of Quinn's blood would reveal intoxicating or impairing substances. In fact the State stipulated below that there was not probable cause. Thus, we do not address whether Quinn's blood evidence is admissible based on probable cause to believe she was impaired. Rather, the State argues that even in the absence of probable cause, Quinn's blood evidence could be admitted in her criminal prosecution pursuant to the "special needs" doctrine by which some specialized searches are evaluated under the Fourth Amendment. Alternatively, it argues that Quinn gave her consent to the blood draw by virtue of A.R.S. § 28–673 and thus the evidence is admissible even if it would not be admissible pursuant to the special needs doctrine. We address and reject each of these arguments in turn.

## II. Whether Quinn's Blood Evidence Can Be Introduced In A Criminal Prosecution Is Not Evaluated According To The Special Needs Exception.

¶ 13 The special needs exception to the Fourth Amendment allows searches in the absence of any individualized suspicion. It applies to government programs "designed to serve special needs, beyond the normal need for law enforcement" that make the warrant and probable cause requirements impracticable. *In re Leopoldo L.,* 209 Ariz. 249, 253, ¶ 15, 99 P.3d 578, 582 (App.2004) (quoting *City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)). The exception has been applied to, among other things, warrantless testing of railway employees following accidents, *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 633, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), federal employees working in sensitive positions, *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 679, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), and DNA testing of juveniles adjudicated delinquent for committing sexual offenses, *Leopoldo L.,* 209 Ariz. at 255, ¶ 23, 99 P.3d at 584.

¶ 14 Section 28–673, like similar statutes in other states, is not ostensibly designed to facilitate criminal prosecutions. On its face, the statute only authorizes a warrantless blood draw in the context of a civil license revocation proceeding. *Cf. Campbell,* 106 Ariz. at 550 n.7, 479 P.2d at 693, n.7 (holding that "suspension proceedings under [Arizona's] Implied Consent Law are civil in nature"). The plain text of § 28–673 only provides that if the results of the warrantless blood draw demonstrate that the driver was intoxicated, the driver's license is revoked for not less than ninety days. A.R.S. § 28–673(C).[5] No other use of the test results is explicitly authorized by the statute.

¶ 15 We have no need under the facts of this case to determine whether A.R.S. § 28–673 would authorize the introduction of blood evidence taken without a warrant in a criminal prosecution if the State could otherwise establish probable cause that a driver was under the influence. The only question presented here is whether blood drawn pursuant to the license revocation statute may be admitted in a criminal prosecution when the blood was drawn in the absence of probable cause. To that end we first determine whether a search of a person's blood conducted only for license suspension purposes fits

---

5. The statute also permits the driver to refuse a test of his or her blood, breath, or urine, but if the driver does so his or her license is administratively suspended for at least twelve months. A.R.S. § 28–673(C).

within the special needs exception to the Fourth Amendment's probable cause requirement.

¶ 16 Illinois has held that an administrative license revocation procedure qualifies as a "special need" under the Fourth Amendment, and thus does not require probable cause to believe a driver is intoxicated prior to drawing the driver's blood for license revocation purposes. According to this view, license revocation proceedings do not primarily serve a law enforcement purpose, and thus may be accomplished in the absence of probable cause, because "[t]o the extent that a statute removes chemically impaired drivers from the road without relying on criminal sanctions, it serves the State's interests beyond the need for normal law enforcement." *Fink v. Ryan,* 174 Ill.2d 302, 220 Ill.Dec. 369, 673 N.E.2d 281, 285 (1996) (internal quotations omitted).

¶ 17 In interpreting its statute that is comparable to § 28–673, the Illinois Supreme Court further reasoned that because the statute authorized the blood draw for purely non-law-enforcement purposes, the introduction of the blood test in a criminal prosecution was purely "incidental" to the statutory purpose of the blood draw. *See Fink,* 220 Ill.Dec. 369, 673 N.E.2d at 287. Because the use was only "incidental" to its purpose, Illinois determined that it was permitted by the special interest exception. *Id.* Thus, the *Fink* court reasoned that because the purpose of the statute was not to create evidence for a criminal prosecution, the statute could be used to create evidence for a criminal prosecution. We are unwilling to follow such reasoning in this context.[6] *See, e.g., Skinner,* 489 U.S. at 621 n. 5, 109 S.Ct. 1402 (noting that the routine use of an administrative blood draw statute to gather evidence for criminal prosecutions might give rise to an inference that the statute was being used as a pretext to circumvent the Fourth Amendment).

¶ 18 Maine also apparently upholds warrantless searches in the context of civil license revocation proceedings. To reinforce that the purpose of the program is civil only, however, Maine's statute expressly prohibits the use of evidence resulting from administrative blood draw statutes in a criminal prosecution unless the State can establish independent probable cause, separate from the blood test results, that the driver was impaired at the time of the accident. *State v. Roche,* 681 A.2d 472, 473 n. 1 (Me.1996). A third state—Alaska—did not strike its similar statute as unconstitutional but it interpreted the statute to require probable cause to believe the driver was impaired prior to admitting blood tests taken pursuant to the license revocation statute in a criminal prosecution. *See State v. Blank,* 90 P.3d 156 (Alaska 2004).

¶ 19 Here, the State, while urging to some extent the logic of the Illinois court in *Fink,* also cites what we acknowledge to be the indisputably worthy objective of keeping our highways safe from impaired drivers. The State asserts that because many in Arizona drive on its highways despite the suspension of their licenses, § 28–673 as an administrative regulation alone is insufficient to accomplish the removal of impaired drivers from our highways.

¶ 20 While we appreciate the candor of the State's argument, the argument's premise requires its rejection. The special needs exception, by definition, does not apply when the purpose of the statute is the "need for law enforcement." *Leopoldo L.,* 209 Ariz. at 253, ¶ 15, 99 P.3d at 582. The prosecution of impaired drivers for DUI or other criminal charges is a law enforcement function and the State acknowledges as much. Thus, in those instances when there is no probable cause to believe that a driver is impaired, tests on blood drawn pursuant to § 28–673 are not admissible in a criminal prosecution pursuant to the special needs exception.

---

6. Even if we accepted the reasoning of *Fink,* it would not necessarily justify the blood draw here, because in *Fink* the statute also required that prior to the blood draw the driver be arrested for a non-equipment violation of the Illinois traffic code. Under such circumstances the Illinois Supreme Court determined the driver had a diminished expectation of privacy in the contents of his blood. Here, by contrast, there is no evidence that Quinn was arrested for a criminal traffic violation.

¶ 21 In so holding we join the majority of states that have determined that the "special needs" analysis does not permit the use in a criminal prosecution of results from warrantless blood draws authorized by administrative license revocation statutes similar to § 28–673. *See, e.g., Cooper v. State,* 277 Ga. 282, 587 S.E.2d 605, 611 (2003) (holding that no matter how important the purpose of protecting citizens from intoxicated drivers, "it does not create a special need to depart from the Fourth Amendment's requirement of probable cause"); *Hannoy v. State,* 789 N.E.2d 977, 983 (Ind.Ct.App.2003) ("We conclude we are constrained by clear precedent from the United States Supreme Court that the 'special needs' exception cannot be invoked in this case or cases similar in nature."); *McDuff,* 763 So.2d at 855 ("Because the statute is designed to further this law enforcement purpose, we do not believe it falls within the special needs exception to the probable cause requirement."); *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308, 314 (1992) ("No matter how compelling, . . . the Commonwealth's interest in securing evidence that a driver is operating a vehicle under the influence of alcohol or drugs does not evince a special need that would justify departure from the probable cause requirements of the Fourth Amendment.").

¶ 22 At first glance, such a determination may seem inconsistent with the application of Arizona's other implied consent statute—A.R.S. § 28–1321(B). Like § 28–673, § 28–1321(B) is also part of an administrative license revocation program. Like § 28–673, if the test results demonstrate that the driver was intoxicated, the driver's license is suspended for a period of not less than ninety days.[7] Like § 28–673, § 28–1321(B) also does not explicitly authorize any other use of blood tests taken pursuant to it. *But see* § A.R.S. § 28–1323 (authorizing results of breath test to be used in "any trial, action or proceeding" so long as certain prerequisites are met.)

¶ 23 Nevertheless, unlike § 28–673, blood drawn pursuant to A.R.S. § 28–1321 may be introduced in a criminal prosecution to establish that the driver was intoxicated. But, as we have already pointed out, A.R.S. § 28–1321 is distinguishable in one important respect from § 28–673. Unlike § 28–673, § 28–1321 requires that a driver be arrested for DUI, and thus that an officer have probable cause to believe that the driver was under the influence, before the driver's blood can be taken without a warrant pursuant to the statute. Thus, unlike § 28–673, a blood sample taken pursuant to A.R.S. § 28–1321 independently complies with the probable cause requirement of the Fourth Amendment regardless of whether the license revocation scheme qualifies as a "special exception" to the Fourth Amendment.[8] The results are thus admissible in a criminal prosecution without offending the Fourth Amendment regardless of the "special needs" exception to the probable cause requirement.

¶ 24 For the above reasons, we decline to find that the special needs exception to the Fourth Amendment's probable cause requirement permits blood evidence taken pursuant to § 28–673 to be admitted in a criminal prosecution.

## III. The State Cannot Extend Driving Privileges Conditioned On The Surrender of The Probable Cause Requirement.

¶ 25 The State further asserts that, even assuming the statute does not fit within the special needs exception, Quinn consented to the search because § 28–673 specifies that all those who drive a vehicle on Arizona roads consent to such a search. In support it relies on *Tornabene v. Bonine ex rel. Ariz. Highway Dep't,* 203 Ariz. 326, 334, ¶ 19, 54 P.3d 355, 363 (App.2002), which held, "driving in Arizona is not a right, but a privilege, subject to legislative mandate."

7. It also permits the driver to refuse to participate in a test, but in such a case the driver's license is similarly suspended for at least twelve months.

8. Arizona's medical blood draw statute also independently complies with the requirements of the Fourth Amendment because it requires probable cause to believe that a driver was under the influence before the driver's blood can be taken without a warrant. A.R.S. § 28–1388(E).

¶ 26 Of course, as the above discussion demonstrates, it is not clear that the statute constitutes consent to a search other than for purposes of an administrative license suspension proceeding. And, at any rate, states may not condition the grant of a privilege on the forfeiture of a constitutional right. *Tornabene* itself recognizes that "a statute cannot circumvent a firmly established constitutional right." *Id.* The United States Supreme Court has mandated that:

> [i]t would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold. It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*Frost v. R.R. Comm'n of California*, 271 U.S. 583, 593–94, 46 S.Ct. 605, 70 L.Ed. 1101 (1926); *see also Ybarra v. Illinois*, 444 U.S. 85, 96, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (invalidating a state statute authorizing searches without probable cause or a warrant and noting that the Supreme Court will not hesitate to hold such statutes unconstitutional); *Slochower v. Bd. of Higher Educ.*, 350 U.S. 551, 555, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (holding that the State cannot condition the granting of even a privilege upon the renunciation of the constitutional right to procedural due process); *Cooper*, 587 S.E.2d at 612 ("To hold that the legislature could nonetheless pass laws stating that a person 'impliedly' consents to searches under certain circumstances where a search would otherwise be unlawful would be to condone an unconstitutional bypassing of the Fourth Amendment.") (quoting *Hannoy*, 789 N.E.2d at 987); *Parrish v. Civil Serv. Comm'n of Alameda County*, 66 Cal.2d 260, 57 Cal.Rptr. 623, 425 P.2d 223, 230–31 (1967) (holding that the county's policy of conditioning receipt of welfare benefits upon waiver of Fourth Amendment rights was unconstitutional).

¶ 27 As *Schmerber* makes clear, Quinn's constitutional right is to be free of any searches of her blood "[i] n the absence of a clear indication" that her blood would demonstrate the presence of alcohol or other controlled substances. 384 U.S. at 769–70, 86 S.Ct. 1826. Thus, within the limits of the Constitution, the State cannot condition Quinn's driving privilege on the surrender of her constitutional right not to have evidence admitted against her in a criminal prosecution that was taken from her without a consent and in the absence of probable cause.

## CONCLUSION

¶ 28 Because we find that A.R.S. § 28–673 does not authorize the admission in a criminal proceeding of evidence seized in the absence of probable cause, we affirm the decision of the trial court suppressing that evidence.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and DIANE M. JOHNSEN, Judge.