BOLICK, J.,
dissenting:
¶ 23 I believe that the entrapment defense requirement in AR.S. § 13-206(A) presents serious constitutional concerns; and that by the statute’s plain meaning, Gray is entitled to raise an entrapment defense. Accordingly, I respectfully dissent.
I.
¶ 24 Arizona is unique in many ways, most of them good. It is a freedom-loving state, as reflected in the words engraved above the entrance to our Supreme Court: “Where law ends, tyranny begins.” This case illustrates the wisdom of those words.
¶ 25 One way in which Arizona is unique, unfortunately, is its statutory requirement that a criminal defendant must admit the substantial elements of the crime before raising an entrapment defense, a rule the majority today affirms. Arizona’s outlier status in that regard is well-recognized but not well-regarded. See, e.g., Marcus at § 6.13 (“Perhaps the court to follow most strictly the inconsistent defense principle is the Arizona Supreme Court” and “the Arizona view is in the distinct minority”); Soule, 168 Ariz. at 137, 811 P.2d at 1074 (Feldman, J., dissenting) (“the majority effectively leaves Arizona as a minority of one”).[1] There are many issues on which Arizona might productively blaze a distinctive trail, but its draconian requirement for invoking the entrapment defense is not one of them.
¶ 26 The majority points out that entrapment is a statutorily based affirmative defense, and that a criminal defendant has no *481 constitutional right to invoke it. Hence, the majority concludes, the state may condition the exercise of the defense however it chooses. To the contrary, by requiring a defendant to affirmatively admit the substantial elements of the crime, the statute (especially as construed in this decision) implicates the defendant’s right against self-incrimination, protected both by the Fifth Amendment (“No person ... shall be compelled in any criminal case to be a witness against himself____”), and by article 2, section 10 of the Arizona Constitution (“No person shall be compelled in any criminal case to give evidence against himself____”).
¶ 27 The entrapment defense plays an important role not only in protecting the due process rights of criminal defendants by ensuring that they will be punished only for crimes for which they are genuinely culpable, but in constraining government conduct that is incompatible with a free society. As the United States Supreme Court declared in Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 77 L.Ed. 413 (1932), “The defense is available, not in the view that the accused though guilty may go free, but that the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct.”
¶28 The Court formally articulated the entrapment defense in Sorrells, in which the defendant pleaded not guilty to charges of possessing and selling whiskey in violation of Prohibition laws and also raised an entrapment defense. Id. at 438, 53 S.Ct. 210. Construing the applicable criminal statutes to allow an entrapment defense, the majority ruled that the question of entrapment should be presented to the jury. Id. at 452, 53 S.Ct. 210.
¶ 29 Justice Owen Roberts, joined by Justices Brandéis and Stone, agreed with the result but issued a separate concurring opinion. The trio defined entrapment as “the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer.” Id. at 454, 53 S.Ct. 210. However, differing with the opinion of the Court, they concluded that the entrapment defense did not derive from statute.
The doctrine rests, rather, on a fundamental rule of public policy. The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention.
Id. at 457, 53 S.Ct. 210.
¶ 30 Under any circumstances, entrapment is no easy defense. As defined in Sorrells and widely applied since then, the defense is established only when “the particular act was committed at the instance of government officials,” weighed against any evidence regarding “the predisposition and criminal design of the defendant.” Id. at 451, 53 S.Ct. 210. Where it is an affirmative defense, as in Arizona, the defendant has the burden of proof.
¶ 31 In the early days of the entrapment defense, most jurisdictions also held that the defense could not be raised unless the defendant admitted the commission of the acts constituting the crime, on the ground that innocence and entrapment are inconsistent defenses. See Marcus at § 6.11. It is that conventional wisdom the majority embraces in this case. But over time, a number of courts came to reject that view, including the United States Supreme Court in Mathews, 485 U.S. at 64-65, 108 S.Ct. 883.
¶32 Mathews presented the question of whether under federal law, a criminal defendant could raise an entrapment defense without admitting all of the elements of the crime. Id. at 59, 108 S.Ct. 883. In a decision by Chief Justice Rehnquist, the Court concluded, “We are simply not persuaded by the Government’s arguments that we should make the availability of an instruction on entrapment where the evidence justifies it subject to a requirement of consistency to *482 which no other such defense is subject.” Id. at 66,108 S.Ct. 883.
¶ 33 Justice Scalia concurred, observing that “the defense of entrapment will rarely be genuinely inconsistent with the defense on the merits, and when genuine inconsistency exists its effect in destroying the defendant’s credibility will suffice to protect the interests of justice.” Id. at 67, 108 S.Ct. 883 (Scalia, J., concurring). An example that immediately comes to mind from this observation is a crime that requires specific intent. Certainly it would not be inconsistent to admit engaging in certain actions while denying the intent to commit the crime. Yet doing so in “affirmative admission” jurisdictions such as Arizona would mean foregoing either an innocence or entrapment defense even where both may be true.
¶ 34 The Ninth Circuit, in a decision cited with approval by the United States Supreme Court in Mathews, id. at 65-66, 108 S.Ct. 883, held likewise that there “is no conceivable reason for permitting a defendant to assert inconsistent defenses in other contexts but denying him that right in the context of entrapment.” United States v. Demma, 523 F.2d 981, 985 (9th Cir.1975) (en banc). “Indeed, there is a compelling reason for not making an exception of the entrapment defense. The primary function of entrapment is to safeguard the integrity of the law enforcement and prosecution process.” Id.
¶ 35 Like other jurisdictions, Arizona traditionally followed the “inconsistent defense” rule that barred an entrapment defense absent an affirmative admission to the elements of the crime. Nilsen, 134 Ariz. at 431, 657 P.2d at 419. But unlike other jurisdictions, it did not abandon or modify the rule after Mathews. Rather, the Court reaffirmed the rule by a 3-2 vote in Soule, invoking the dissent in Mathews. Soule, 168 Ariz. at 136-37, 811 P.2d at 1073-74. Subsequently, the rule was codified in A.R.S. § 13-206(A).
¶ 36 Commentators have observed that requiring admission of the substantial elements of the crime as a prerequisite to an entrapment defense raises Fifth Amendment self-incrimination concerns. See, e.g., Marcus at § 6.13; Kristine K. Keller, Evolution and Application of the Entrapment Rule: Abandonment of the Inconsistency Rule, 11 Ham-line L. Rev. 351, 366 (1988). Justices Feldman and Gordon pointed out the inverse side of that constitutional problem, that the affirmative admission requirement “relieves the prosecution of its constitutional burden of proving the elements of the case.” Soule, 168 Ariz. at 139, 811 P.2d at 1076 (Feldman, J., dissenting).
¶ 37 Although there is no recognized constitutional right to an entrapment defense, forcing defendants to choose between raising the defense and forfeiting precious constitutional rights presents an unconstitutional condition. “The doctrine of unconstitutional conditions holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether.” Kathleen M. Sullivan, Unconstitutional Conditions, 102 Harv. L. Rev. 1413, 1415 (1989). Here, Arizona offers an entrapment defense to criminal defendants, but only at the cost of surrendering the right against self-incrimination. The state is not constitutionally entitled to exact such a high cost for invoking a legitimate (indeed in many instances essential) defense.
¶ 38 To be sure, not every condition attached to the exercise of a benefit bestowed by government is unconstitutional.
It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.
Frost v. R.R. Comm’n, 271 U.S. 583, 593-94, 46 S.Ct. 605, 70 L.Ed. 1101 (1926). Though the doctrine is far from crystal clear or absolute, the United States Supreme Court has invalidated conditions requiring the relinquishment of constitutional rights on numerous occasions. See, e.g., Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (right to political association may not be exacted as the price for holding public employment); FCC v. League of Women Vot *483 ers of California, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) (public funding of broadcasting may not be conditioned on requirement not to editorialize). As the Court held recently in the context of a land-use permit, the unconstitutional conditions doctrine forbids the government from “pressuring someone into forfeiting a constitutional right” by “coercively withholding benefits,” remarking that the “facile generalization that there is no constitutionally protected right to [the benefit] is to obscure the issue.” Koontz v. St. Johns River Water Mgmt. Dist., — U.S. -, 133 S.Ct. 2586, 2595-96, 186 L.Ed.2d 697 (2013).
¶ 39 The principle applies with great force in the criminal law context. In United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Court struck down part of a federal statute that exposed defendants in certain kidnapping cases to the death penalty unless they pled guilty or waived the right to a jury trial. “The inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial.” Id. at 581, 88 S.Ct. 1209. The Court held, “Whatever might be said of Congress’ objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights.” Id. at 582, 88 S.Ct. 1209. After examining the government’s explanations, the Court concluded that “it is clear that the selective death penalty provision ... cannot be justified.” Id.[2]
¶ 40 Similarly, in State v. Quinn, 218 Ariz. 66, 178 P.3d 1190 (App.2008), our court of appeals excluded the admission of blood samples from a driver that were taken without probable cause. The state argued that a statute required drivers to surrender their right to probable cause as a condition for driving on public roads. Id. at 70 ¶ 12, 178 P.3d at 1194. Citing Frost, the court held that “states may not condition the grant of a privilege on the forfeiture of a constitutional right.” Id. at 73 ¶ 26,178 P.3d at 1197.
¶41 Does A.R.S. § 13-206(A), to use the verbiage from Jackson, “chill,” “deter,” or “discourage” the assertion of the right against self-incrimination? See generally 390 U.S. at 581-82, 88 S.Ct. 1209. Yes, and it does even more: it requires that defendants affirmatively and (by virtue of the majority’s opinion) explicitly admit they have committed the substantial elements of a crime in order to avail themselves of an entrapment defense.
¶ 42 Given the centrality of the right against self-incrimination in both the Bill of Rights and our state’s Declaration of Rights, see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it would be difficult for the State to articulate a sufficient justification for the condition. Instead, the State’s justifications are feeble: first, “the Mathews rule fosters perjury and more litigation,” because “[t]o allow a defendant to testify as to two defenses that cannot both be true is equivalent to sanctioning a defendant’s perjury”; and second, “allowing inconsistent defenses may confuse the jury.” Soule, 168 Ariz. at 136, 811 P.2d at 1073.
¶43 Those justifications repeatedly have been debunked. As the Court remarked in Sorrells, 287 U.S. at 451, 53 S.Ct. 210, “Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience must yield to the essential demands of justice.” The Mathews Court addressed these concerns at length:
The Government argues that allowing a defendant to rely on inconsistent defenses will encourage perjury, lead to jury confusion, and subvert the truth-finding function of the trial. These same concerns are, how *484 ever, present in the civil context, yet inconsistency is expressly allowed under the Federal Rules of Civil Procedure. We do not think that allowing inconsistency necessarily sanctions perjury. Here petitioner wished to testify that he had no intent to commit the crime, and have his attorney argue to the jury that if it concluded otherwise, then it should consider whether that intent was the result of Government inducement. The jury would have considered inconsistent defenses, but petitioner would not have necessarily testified untruthfully.
485 U.S. at 65, 108 S.Ct. 883.
¶ 44 The Court went on to note that as a practical matter, it will be difficult for a defendant to establish entrapment without testifying, which will subject the defendant to cross-examination and impeachment. Id. Moreover, inconsistent defenses will impair a defendant’s credibility, thus providing a cheek against raising them. Id. at 65-66, 108 S.Ct. 883 (citing Demma, 523 F.2d at 985). “While the success of a defendant in convincing a jury that he was entrapped may be reduced by his failure to testify, that is a choice that he has a right to make free of any compulsion whatsoever. To hold otherwise would raise a serious fifth amendment question.” United States v. Annese, 631 F.2d 1041, 1047 (1st Cir.1980).
¶ 45 Ultimately, there is simply no reason not to entrust the entrapment defense to the jury, even where a defendant has not affirmatively and explicitly admitted guilt. See, e.g., Soule, 168 Ariz. at 138, 811 P.2d at 1075 (Feldman, J., dissenting) (“only a jury can determine whether there is any real inconsistency”); Morris v. State, 300 Ark. 340, 779 S.W.2d 526, 528 (1989) (Newbern, J., concurring) (“Finally, I must ask what harm it would do in these cases to permit the instruction,” given that “the defense is an affirmative one, and the burden of proof is wholly on the accused____”). That is especially true in a state in which the “right of trial by jury shall remain inviolate.” Ariz. Const, art. 2, § 23. The State’s justifications for requiring the defendant to affirmatively admit the substantial elements of the crime do not rise to the tremendous cost of surrendering precious constitutional liberties.
¶ 46 Indeed, a prior provision of § 13-206 suffered a similar infirmity. As originally enacted, the statute contained section D, which provided, “If a person raises an entrapment defense, the court shall instruct the jurors that the person has admitted the elements of the offense and that the only issue for their consideration is whether the person has proven the affirmative defense of entrapment by clear and convincing evidence.” A.R.S. § 13-206(D) (1997). Our court of appeals held that § 13-206(D) “utterly eviscerated” a defendant’s “constitutional right to the presumption of innocence and to a jury trial at which the jury was required to detei’mine whether he is guilty beyond a reasonable doubt____” State v. Preston, 197 Ariz. 461, 468 ¶ 17, 4 P.3d 1004, 1011 (App.2000). The court acknowledged the “confusion that could result when a defendant takes the stand and admits the essential elements of an offense, yet the jury is instructed that the defendant is presumed innocent and that the state bears the burden of proof beyond a reasonable doubt on all elements of the offense,” but that “is not a reason, however, to deny a defendant these fundamental, constitutional rights.” Id. at ¶ 18. Likewise here, a decision to invoke § 13-206(A) denies defendants precious rights to a jury determination of guilt or innocence and to remain silent or otherwise avoid self-incrimination.
¶47 Nor does the statute as presently constructed, and as the Court construes it here, cure the unconstitutional condition. Technically, the statute does not require the defendant to testify, allowing the admission of the substantial elements of the crime by “other evidence.” Nonetheless, the Court holds that it requires a defendant to incriminate himself through an “affirmative admission.” The majority says this is permissible because entrapment is an affirmative defense. But in other contexts, criminal defendants are not put to a choice between maintaining innocence and asserting an affirmative defense, and it is precisely that forced choice that comprises the unconstitutional condition.
¶48 The majority suggests that the entrapment condition is no different than a plea bargain, in which a defendant admits an of *485 fense in return for reduced charges and/or penalties. But a plea bargain is exactly that: a bargain. An offer of a plea bargain does not in most instances chill, deter, or discourage the assertion of constitutional rights, and plea bargains serve important interests of certainty, efficiency, and finality. Thus the differences between plea bargains and the condition here are of constitutional magnitude.[3] Indeed, in overturning the admission requirement for an entrapment defense in Demma, 523 F.2d at 986, the Ninth Circuit remarked that continued adherence to the admission requirement “would have generated serious constitutional problems by conditioning the assertion of a defense on the defendant’s yielding his presumption of innocence, his right to remain silent, and his right to have the Government prove the elements of the crime beyond a reasonable doubt.” See also Commonwealth v. Tracey, 416 Mass. 528, 624 N.E.2d 84, 88 (1993).
¶ 49 For the foregoing reasons, in an appropriate case, I would be strongly inclined to hold that the A.R.S. § 13-206(A) affirmative admission requirement constitutes an unconstitutional condition and may not be required to assert an entrapment defense. For purposes of the present case, these serious constitutional concerns counsel the narrowest possible construction of a defendant’s obligations in order to assert an entrapment defense. See, e.g., Hayes v. Cont’l Ins. Co., 178 Ariz. 264, 272, 872 P.2d 668, 677 (1994) (where possible, a court should avoid interpretations that render a statute unconstitutional).
II.
¶ 50 Unfortunately, the majority exacerbates the statute’s constitutional problems by interpreting “other evidence” and “substantial elements” to prevent Gray from raising an entrapment defense even though his words, entered into evidence by the State, were essentially an admission of the crime.
¶ 51 The statute uses two crucial terms that appear pregnant with meaning yet are left undefined: the defendant must admit the “substantial elements” of the crime by testimony or “other evidence.” What constitutes “substantial” elements rather than mere “elements” is unclear. But I agree with the majority that whatever they are, they are set forth in the relatively straightforward language of A.R.S. § 13-3408(A)(7), which provides among other things that a person “shall not knowingly ... sell [or] transfer ... a narcotic drug.”
¶ 52 The meaning of the term “other evidence” seems more obvious. If it is not testimony but is evidence, then by definition it is “other evidence.” Finding this term unclear, the majority resorts to secondary methods of interpretation to determine that “other evidence” means evidence of a defendant’s affirmative admission of the elements of the offense. Although the majority is correct when it says that “[o]ther evidence is not limited to a post-charge admission,” and that a post-Miranda admission would qualify, it fails to adequately explain why a pre-Miranda admission, like the one here, does not constitute other evidence. The majority instead concludes that “[although Gray made incriminating statements in his recorded conversation, he did not affirmatively admit the substantial elements of this offense.” Precisely what magic words are required is left to future litigants and courts to hash out.
¶ 53 Clearly, the recorded statement is “other evidence.” It was offered as such by the State, objected to by defendant, and entered into evidence. Concededly, a closer question is whether Gray’s statement admitted the substantial elements of the crime. The nature of the proposed transaction—to sell or transfer narcotic drags—was clear, *486 and knowingly agreed to by Gray. Then over the course of the journey, Gray said, “I’m a good person” and “I don’t usually do this....” The latter words were spoken immediately subsequent to the transaction, and in their context are an unmistakable admission to knowingly selling or transferring narcotic drugs, which are the substantial elements of the crime. By rejecting a construction of the statute that accepts the recorded statement as other evidence admitting the substantial elements of the crime, the majority plunges the statute into the abyss of uneonstitutionality.
III.
¶ 54 The line between effective law enforcement and entrapment can be a thin one, but it is essential for it separates the rule of law from tyranny. As such, access to the entrapment defense is important not only to those accused of crimes but to society generally. The legislature has great latitude in this area, but it cannot transgress its constitutional boundaries by conditioning a defense upon the surrender of protected liberties.
¶ 55 I attach myself to the views of Arkansas Supreme Court Justice Purtle, who in expressing the opinion that an affirmative admission requirement as a prerequisite to asserting an entrapment defense presents a constitutional question, remarked that “[l]aw enforcement officers ought not to be paid to go about actively encouraging people to commit crimes.” Morris, 779 S.W.2d at 528 (Purtle, J., dissenting). Fortunately, his views ultimately prevailed when the court abolished the requirement in Smoak v. State, 2011 Ark. 529, 385 S.W.3d 257, 263 (2011). I hope our state, doctrinally committed as it is to individual liberty and constraints on excessive government power, soon will put an end to this unconstitutional condition.
¶ 56 In the meantime, Mr. Gray has been sentenced to over nine years in jail for accepting an undercover officer’s invitation to obtain twenty dollars’ worth of crack for a fee of ten dollars. Because he was not allowed to present an entrapment defense without surrendering fundamental rights, we will never know whether Gray was a cunning drug courier awaiting precisely such an opportunity, or whether he was simply waiting for a bus.
¶ 57 With great respect to my colleagues, I dissent.

. Justice Feldman went on to explain, “While some other states forbid inconsistent defenses in entrapment situations, Arizona applies the rule more stricdy than any other court by requiring the defendant to admit every element of the crime as a condition of pleading entrapment, even when denying an element would not be inconsistent with the entrapment defense." Soule, 168 Ariz. at 137, 811 P.2d at 1074. After Soule, Mississippi adopted a statutory requirement nearly identical to Arizona’s. Miss. Code Ann. § 99-1-25 (2005). Previously the Mississippi Supreme Court had abolished the rule that a defendant must admit the offense before receiving an entrapment instruction. Hopson v. State, 625 So.2d 395 (Miss. 1993).

. Compare Jackson, with Williams, 399 U.S. at 84, 90 S.Ct. 1893 ("That the defendant faces ... a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.”). There the defendant was forced to provide notice of an alibi defense and to disclose alibi witnesses, which the Court characterized as “a limited form of pretrial discovery.” Id. at 80, 90 S.Ct. 1893. The defendant was not forced as a condition of raising the alibi defense either to testify or admit the elements of the defense, which is a far cry from the requirement at issue here. Nor is it problematic that defendants must prove, through testimony or otherwise, the affirmative defense. See Dixon, 548 U.S. at 5-8, 126 S.Ct. 2437.

. Neither case cited by the majority, see ¶ 19, involved defendants being required to affirmatively admit elements of the crime. Rather, they involved voluntary decisions, specifically a plea bargain and a voluntary clemency interview, which only serve to underscore the mandatory nature of the requirement here. Those situations present a marked difference from being required to affirmatively admit the substantial elements of the crime. See Corbitt, 439 U.S. at 217, 99 S.Ct. 492 (in plea bargain context, "the pressures to forgo trial and to plead to the charge in this case are not what they were in Jackson")', Ohio Adult Parole Auth., 523 U.S. at 288, 118 S.Ct. 1244 ("this pressure to speak in the hope of improving his chance of being granted clemency does not make the interview compelled”).