364 P.3d 485

STATE of Arizona, Appellee,

v.

Duane E. OKKEN, Appellant.

No. 1 CA–CR 15–0196.

Court of Appeals of Arizona, Division 1.

Dec. 8, 2015.

Scottsdale City Prosecutor's Office, By Kenneth M. Flint, Seth Peterson, Scottsdale, Counsel for Appellee.

Cameron A. Morgan Attorney at Law, By Cameron A. Morgan, Scottsdale, Counsel for Appellant.

Judge PETER B. SWANN delivered the opinion of the court, in which Presiding Judge KENTON D. JONES and Judge SAMUEL A. THUMMA joined.

## OPINION

SWANN, Judge:

¶ 1 Duane E. Okken ("Defendant") appeals from the superior court's order affirming his city court conviction for driving under the influence ("DUI"). Defendant's conviction was based on the results of blood tests to which he consented after being informed of the administrative penalties for refusal prescribed by Arizona's "implied consent" statute, A.R.S. § 28–1321. Defendant now challenges the facial constitutionality of § 28–1321, arguing that it is invalid under the United States Supreme Court's decision in *Missouri v. McNeely*, — U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), and the doctrine of "unconstitutional conditions." We reject these facial challenges. Consistent with the underlying principles of *McNeely* (an exigent-circumstances case), § 28–1321 authorizes warrantless searches of a DUI arrestee's bodily substances only when the arrestee gives actual, voluntary consent, as determined by the totality of the circumstances. Further, the statutory penalties for failure to give consent do not violate the unconstitutional conditions doctrine. The state has a substantial interest in keeping intoxicated drivers off the roadways, and the statute reasonably serves that interest by penalizing an arrestee's refusal to submit to testing with suspension of his or her driver's license.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In January 2013, a police officer stopped Defendant after observing him drive slowly through a Scottsdale neighborhood and make a turn that crossed the center line. While speaking with Defendant, officers noticed that he smelled of alcohol, his eyes were bloodshot and watery, his speech was slurred, and he was unsteady on his feet. Defendant admitted having recently consumed wine; he also stated that he had taken medication that caused dizziness. An officer administered a horizontal gaze nystagmus test and a preliminary breath test that indicated impairment. The officer placed Defendant under arrest, handcuffed him, and placed him in the back seat of a patrol vehicle.

¶ 3 The officer sat in the driver's seat of the patrol vehicle and read Defendant a series of admonitions from a form, "Admin Per Se/Implied Consent Affidavit," based on A.R.S. § 28–1321. Defendant indicated he understood each of the admonitions. The officer then asked Defendant if he would submit to a blood test and Defendant responded that he would. The officer transported Defendant to jail and drew a sample of his blood. Later testing showed that the sample contained 0.225% ethyl alcohol.

¶ 4 The state tiled a criminal DUI complaint against Defendant in the Scottsdale City Court. Defendant tiled a motion to suppress the blood test results, arguing that the sample was obtained in violation of his rights under the Fourth Amendment. Among other things, Defendant challenged the constitutionality of A.R.S. § 28–1321. After an evidentiary hearing and oral argument, the city court ruled that the implied consent statute was constitutional and that, based on the totality of the circumstances, Defendant's consent was voluntary.

¶ 5 The parties submitted the matter on the record, and the city court found that Defendant was guilty of DUI under A.R.S. § 28–1381(A)(1) and (2). Defendant appealed to the superior court, again challenging the blood test results under the Fourth Amendment. The superior court affirmed. Defendant timely appeals.

## JURISDICTION AND STANDARD OF REVIEW

¶ 6 Under A.R.S. § 22–375(A), "[a]n appeal may be taken by the defendant ... from a final judgment of the superior court in an action appealed from a ... municipal court, if the action involves the validity of a tax, impost, assessment, toll, municipal fine or statute." The state contends that because the implied consent statute is a state (not municipal) law, we lack jurisdiction under § 22–375(A). The state's argument rests upon the absence of a comma that is grammatically optional. Were we to accept the state's reading of the statute, the rules of grammar would require us to insert an additional conjunction before the word "municipal." Bryan

A. Garner, *Garner's Modern American Usage,* at 676 (3d ed.2009); Randolph Quirk et al., *A Comprehensive Grammar of the English Language,* at 1619 (1st ed.1985). We discern no ambiguity in the statute, and will not write words into it. *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

¶ 7 In addition, the state's position effectively concocts a term—"municipal statute"—that appears nowhere in the Arizona Revised Statutes and seems not to exist. Municipalities do not enact "statutes." The legislature enacts statutes and municipalities enact ordinances. We presume that the legislature understood this definitional distinction when it enacted A.R.S. § 22–375(A), and that it meant to include challenges to legislative enactments when it defined the scope of our jurisdiction over limited jurisdiction court appeals. We have long exercised jurisdiction under § 22–375(A) to consider challenges to state statutes. *See, e.g., State v. Yabe,* 114 Ariz. 89, 90, 559 P.2d 209, 210 (App.1977) (considering constitutionality of state obscenity statute). We do that again here.

¶ 8 Our jurisdiction is limited, however, to the question of the implied consent statute's *facial* constitutionality—"[w]e are without jurisdiction to review any alleged unconstitutional *application* of the statute." *Yabe,* 114 Ariz. at 90, 559 P.2d at 210 (emphasis added). We therefore deny Defendant's request that we consider whether the statute is unconstitutional as applied to him. We also deny Defendant's request to join the appeal with a special action that challenges the statute's application in a different case.

¶ 9 We review the facial challenge de novo. *State v. Russo,* 219 Ariz. 223, 225, ¶ 4, 196 P.3d 826, 827 (App.2008). We presume that a statute is constitutional unless it is shown to be otherwise by the challenging party. *Gallardo v. State,* 236 Ariz. 84, 87–88, ¶¶ 8–9, 336 P.3d 717, 720–21 (2014); *Chevron Chem. Co. v. Superior Court (Hale),* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982). "We will resolve all uncertainties in favor of constitutionality," *State v. Gilfillan,* 196 Ariz. 396, 402, ¶ 17, 998 P.2d 1069, 1075 (App.

2000). We will find a statute unconstitutional on its face only if the challenging party demonstrates that there is no set of circumstances under which the statute would be found constitutional. *Lisa K. v. Ariz. Dep't of Econ. Sec.,* 230 Ariz. 173, 177, ¶ 8, 281 P.3d 1041, 1045 (App.2012).

## DISCUSSION

¶ 10 The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Tests of bodily substances are searches subject to the Fourth Amendment's constraints. *State v. Jones,* 203 Ariz. 1, 9, ¶ 27, 49 P.3d 273, 281 (2002) (blood tests); *Petersen v. City of Mesa,* 207 Ariz. 35, 38, ¶ 9, 83 P.3d 35, 38 (2004) (urine and breath tests). "In general, under the Fourth Amendment, warrantless searches 'are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *State v. Butler,* 232 Ariz. 84, 87, ¶ 12, 302 P.3d 609, 612 (2013) (citation omitted). Consent is one such exception. *Id.* at ¶ 13.

¶ 11 A.R.S. § 28–1321 creates a two-tiered framework for consent in DUI cases. Under § 28–1321(A),

[a] person who operates a motor vehicle in this state gives consent ... to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if the person is arrested for any offense arising out of acts alleged to have been committed in violation of this chapter [concerning driving under the influence] or § 4–244, paragraph 34 [concerning driving with spirituous liquor in one's body when under twenty-one years of age] while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs.

¶ 12 But "[t]he 'consent' by motorists referenced in subsection (A) does not always authorize warrantless testing of arrestees." *Carrillo v. Houser,* 224 Ariz. 463, 465, ¶ 10, 232 P.3d 1245, 1247 (2010). Section 28–1321(B) provides that "[a]fter an arrest a violator shall be requested to submit to and

successfully complete any test or tests pre-scribed by subsection A of this section, *and if the violator refuses* the violator shall be in-formed that the violator's license or permit to drive will be suspended or denied for twelve months, or for two years for a second or subsequent refusal within a period of eighty-four months, *unless the violator expressly agrees* to submit to and successfully com-pletes the test or tests." (Emphases added.) "[T]o satisfy the statutory requirement, the arrestee must unequivocally manifest assent to the testing by words or conduct," *Carrillo*, 224 Ariz. at 467, ¶ 19, 232 P.3d at 1249, though persons who have been rendered "in-capable of refusal" shall be "deemed not to have withdrawn the consent provided by sub-section A," A.R.S. § 28–1321(C). An arres-tee's withdrawal of the statutorily implied consent is meaningful: under § 28–1321(D), *"[i]f a person under arrest refuses to submit* to the test designated by the law enforce-ment agency as provided in subsection A of this section[, *t]he test shall not be given, except as provided in § 28–1388, subsection E [authorizing testing when there is proba-ble cause of DUI and bodily-substance sam-ples have been taken for other purposes] or pursuant to a search warrant."* (Emphases added.)

¶ 13 Construing a statute similar to § 28–1321, the Wisconsin Court of Appeals provid-ed a helpful summary of the two-tiered framework:

"Implied consent" is not an intuitive or plainly descriptive term with respect to how the implied consent law works.... [A]ctual consent to a blood draw is not "implied consent," but rather a possible result of requiring the driver to choose whether to consent under the implied con-sent law.

There are two consent issues in play when an officer relies on the implied con-sent law. The first begins with the "im-plied consent" to a blood draw that all persons accept as a condition of being li-censed to drive a vehicle on Wisconsin public road ways. The existence of this "implied consent" does not mean that po-lice may require a driver to submit to a blood draw. Rather, it means that, in

situations specified by the legislature, if a driver chooses not to consent to a blood draw (effectively declining to comply with the implied consent law), the driver may be penalized. This penalty scenario for "refusals" created by the implied consent law sets the scene for the second consent issue.

*State v. Padley*, 354 Wis.2d 545, 849 N.W.2d 867, 876, ¶¶ 25–26 (Wis.App.2014).

¶ 14 Defendant raises several arguments regarding the validity of § 28–1321 under the Fourth Amendment. We address each in turn.

## I. *MCNEELY* DOES NOT RENDER A.R.S. § 28–1321 FACIALLY UNCON-STITUTIONAL.

¶ 15 In *Campbell v. Superior Court (White)*, the Arizona Supreme Court held that there was "no merit" to an argument that § 28–1321 violates the Fourth Amend-ment "in light of the holding in *Schmerber v. State of California*, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] (1966)." 106 Ariz. 542, 554, 479 P.2d 685, 697 (1971). *Schmerber* upheld a warrantless blood test of a DUI arrestee whose vehicle had crashed into a tree, reasoning that delays from transporting the arrestee to a hospital and investigating the scene of the accident created circum-stances that, in view of the body's natural ability to metabolize alcohol, threatened the destruction of evidence. 384 U.S. at 758, 758 n. 2, 770–71, 86 S.Ct. 1826. Defendant con-tends that *Schmerber* has been overruled by *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), and that § 28–1321 is unconstitutional under *McNeely*.

¶ 16 *McNeely* did not overrule *Schmerber*, but rather clarified it. *McNeely* held that the metabolic process does not, by itself, always create circumstances justifying an "exigency" exception to the warrant require-ment. 133 S.Ct. at 1561. The Court held that "some circumstances will make obtain-ing a warrant impractical such that the dissi-pation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test[, but t]hat ... is a reason to decide each case on its facts, as we did in *Schmerber*, not to accept

the 'considerable overgeneralization' that a *per se* rule would reflect." 133 S.Ct. at 1561 (citation omitted). The Court held that exigent circumstances should be evaluated based on the "traditional totality of the circumstances analysis," in which the delay inherent in the blood-testing process is but one factor. *Id.* at 1563.

¶ 17 The holding of *McNeely* did not concern the consent exception to the warrant requirement. The Court's disapproval of a categorical exception in the exigent-circumstances context is, however, instructive on the issue of consent, as the Arizona Supreme Court recognized in *State v. Butler*, 232 Ariz. 84, 302 P.3d 609 (2013). *Butler* relied on *McNeely* to conclude that "a compelled blood draw, even when administered pursuant to § 28–1321, is a search subject to the Fourth Amendment's constraints," and that "independent of § 28–1321, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw," with voluntariness to be assessed "under the totality of the circumstances." *Butler*, 232 Ariz. at 87, 88, ¶¶ 10, 18, 302 P.3d at 612, 613; *accord Flonnory v. Delaware*, 109 A.3d 1060, 1065–66 (Del.2015); *State v. Wulff*, 157 Idaho 416, 337 P.3d 575, 581 (2014). *Butler* therefore established that consent, like exigent circumstances, must be evaluated based on the facts—not categorically implied.[1]

▮ ¶ 18 If § 28–1321 purported to create irrevocable implied consent, it would be constitutionally infirm under *McNeely* and *Butler. See Byars v. State*, — Nev. —, 336 P.3d 939, 943–46 (2014); *Wulff*, 337 P.3d at 581. But, as discussed above, the statute requires *actual* consent before a warrantless search may be performed. The statute therefore does not run afoul of *McNeely*.[2]

## II. SECTION 28–1321 IS NOT IMPERMISSIBLY COERCIVE UNDER THE UNCONSTITUTIONAL CONDITIONS DOCTRINE.

¶ 19 Defendant next contends that § 28–1321 is unduly coercive because it conditions a person's authorization to drive—a privilege that exists as a matter of legislative grace under A.R.S. § 28–3151, *see Tornabene v. Bonine ex rel. Ariz. Highway Dep't*, 203 Ariz. 326, 334, ¶ 19, 54 P.3d 355, 363 (App. 2002)—on the surrender of Fourth Amendment rights.

¶ 20 Defendant relies on *State v. Quinn*, 218 Ariz. 66, 178 P.3d 1190 (App.2008). *Quinn* involved A.R.S. § 28–673, which addresses a motorist's consent to bodily-substance testing "if the person is involved in a traffic accident resulting in death or serious physical injury ... and a law enforcement officer has probable cause to believe that the person caused the accident or the person is issued a citation for a violation of [various provisions within Title 28]." *Quinn* held that § 28–673 "does not authorize the use of blood evidence in a criminal prosecution when that evidence was taken from a defendant driver without a warrant in the absence of probable cause that the driver was under the influence." 218 Ariz. at 68, ¶ 1, 178 P.3d at 1192. In reaching this conclusion, *Quinn*, citing the "unconstitutional conditions" doctrine as stated in *Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926), explained that "states may not condition the grant of a privilege on the forfeiture of a constitutional right," and concluded that "within the limits of the Constitution, the State cannot condition [the defendant]'s driving privilege on the surrender of her constitutional right not to have evidence admitted against her in a criminal prosecution that was taken from her without a consent and in

---

1. In *Butler*, the defendant consented to a blood test after being advised of the consequences of refusal under the implied consent statute, but other factors—specifically, the defendant's age, his mental state, and the duration and circumstances of his detention—supported a finding that the consent was involuntary. 232 Ariz. at 88–89, ¶¶ 20–21, 302 P.3d at 613–14. *Butler* therefore affirmed the trial court's suppression of the test results. *Id.* at 89, ¶ 21, 302 P.3d at 614.

2. Numerous jurisdictions have addressed *McNeely* challenges to their implied consent statutes. Contrary to Defendant's contention, our conclusion conforms with the national view. Statutes that create revocable consent have uniformly been held constitutional, even where refusal carries criminal penalties. *See, e.g., U.S. v. Sugiyama*, 113 F.Supp.3d 784, 789–96, 2015 WL 4092494, at *4–10 (D.Md.2015) (collecting cases).

the absence of probable cause." 218 Ariz. at 73, ¶¶ 26–27, 178 P.3d at 1197.

■ ¶ 21 We agree with *Quinn* that—consistent with *Butler*, 232 Ariz. at 88, ¶¶ 17–18, 302 P.3d at 613—the legislature cannot circumvent the Fourth Amendment by imputing to all drivers who are involved in serious traffic accidents an implied consent to otherwise unlawful searches. But we conclude that the unconstitutional conditions doctrine does not render § 28–1321 facially unconstitutional.[3]

■ ¶ 22 The unconstitutional conditions doctrine provides that the "government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether. It reflects the triumph of the view that government may not do indirectly what it may not do directly over the view that the greater power to deny a benefit includes the lesser power to impose a condition on its receipt." Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989). But the doctrine does not create a clear or inflexible rule. *See Dolan v. City of Tigard*, 512 U.S. 374, 407 n. 12, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (Stevens, J., dissenting) ("Although it has a long history, . . . the 'unconstitutional conditions' doctrine has for just as long suffered from notoriously inconsistent application; it has never been an overarching principle of constitutional law that operates with equal force regardless of the nature of the rights and powers in question."); *Rust v. Sullivan*, 500 U.S. 173, 205, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (Blackmun, J., dissenting) ("[T]he question squarely presented by the regulations—the extent to which the Government may attach an otherwise unconstitutional condition to the receipt of a public benefit—implicates a troubled area of our jurisprudence in which a court ought not entangle itself unnecessarily."); *see also* Sul-

livan, *supra*, at 1416 ("As applied, however, the doctrine of unconstitutional conditions is riven with inconsistencies.").

■ ¶ 23 "[T]he Constitution does not forbid '*every* government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.' " *Jenkins v. Anderson*, 447 U.S. 231, 236, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (citation omitted) (emphasis added). In the Fourth Amendment context, the United States Supreme Court affirmed as constitutional state laws that conditioned the receipt of federal aid benefits upon periodic home visits by caseworkers. *Wyman v. James*, 400 U.S. 309, 326, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). Further, in *South Dakota v. Neville*, a Fifth Amendment case, the Court stated that a license-revocation "penalty for refusing to take a blood-alcohol test [under an implied consent statute similar to Arizona's] is *unquestionably legitimate*, assuming appropriate procedural protections." 459 U.S. 553, 560, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (emphasis added). The Court further explained:

> The simple blood-alcohol test is so safe, painless, and commonplace, see *Schmerber*, 384 U.S., at 771, 86 S.Ct., at 1836, that respondent concedes, as he must, that the state could legitimately compel the suspect, against his will, to accede to the test.[4] Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger

---

**3.** We join in this conclusion with multiple other states construing similar statutes. *E.g., Beylund v. Levi*, 859 N.W.2d 403 (N.D.2015); *Stevens v. Comm'r of Public Safety*, 850 N.W.2d 717 (Minn. App.2014).

**4.** Similarly, Defendant appears to concede that a person subject to § 28–1321 could be forced to

submit to a blood draw under a warrant. The statute is limited to DUI arrestees, and by definition, law enforcement will have probable cause to believe that they have intoxicating liquor or drugs in their blood. *See* A.R.S. § 13–3883(A)(1)–(3).

than that arising from a refusal to take the test.

> *We recognize, of course, that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices* .... We hold, therefore, that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination.

*Id.* at 563–64, 103 S.Ct. 916 (second emphasis added); *see also McNeely,* 133 S.Ct. at 1566 (plurality opinion) ("States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws ... [that] impose significant consequences when a motorist withdraws consent....").

¶ 24 "[T]he cases involving arguments that unconstitutional conditions have been attached to state-proffered benefits ... have turned on analysis of four general variables: (1) the nature of the right affected, (2) the degree of infringement of the right, (3) the nature of the benefit offered, and (4) the strength and nature of the state's interest in conditioning the benefit." Comment, *Another Look at Unconstitutional Conditions,* 117 U. Pa. L. Rev. 144, 151 (1968). The Court "recurrent[ly] focus[es] on the 'germaneness' of condition to benefit." Sullivan, *supra,* at 1457. Here, the strength of the state's interest in regulating intoxicated drivers, and the nexus between that interest and the administrative penalties prescribed by § 28–1321, support a finding of constitutionality. In view of the "carnage caused by drunk drivers," the state's "interest ... in depriving the drunk driver of permission to continue operating an automobile is particularly strong." *Illinois v. Batchelder,* 463 U.S. 1112, 1118, 103 S.Ct. 3513, 77 L.Ed.2d 1267 (1983) (citation omitted); *see also Mackey v. Montrym,* 443 U.S. 1, 17–18, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Further, the penalties provided by § 28–1321 are closely tailored to that important interest—the statute aims to ensure that dangerous drivers will be removed from the roadways even if they are able to avoid or lessen their criminal liability by delaying testing. *Cf. Campbell,* 106 Ariz. at 546–49, 479 P.2d at 689–92 (upholding implied consent law as valid exercise of state's police powers, holding that "the breathalyzer test is a reasonable means for achieving the goals of the legislature.... [and] ... it is also reasonable to suspend the driver's license of a person who refuses to submit to the tests"). The condition and the benefit are directly related, and the penalties are not facially unreasonable: a person who has not been arrested for DUI within the past seven years may refuse testing at the cost of a year's suspension of driving privileges, and a person who has previously refused testing within the past seven years faces two years' suspension. We reject Defendant's argument that the statute violates the unconstitutional conditions doctrine.

## III. *CAMARA* DOES NOT APPLY TO THE QUESTION OF A.R.S. § 28–1321'S CONSTITUTIONALITY.

■ ¶ 25 Defendant finally contends that § 28–1321 is unconstitutional in view of *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In *Camara,* a city inspector sought to enter a lessee's residence to investigate possible housing code violations. *Id.* at 526, 87 S.Ct. 1727. When the lessee refused to consent to the inspection, he was criminally charged with violating a city ordinance that authorized inspectors to enter all premises within the city for purposes of carrying out their official duties. *Id.* at 526–27, 87 S.Ct. 1727. The Court held that under the facts, the lessee had a Fourth Amendment right to insist that the inspector obtain an administrative search warrant, and could not constitutionally be convicted for refusing to consent to the inspection. *Id.* at 540, 87 S.Ct. 1727. Unlike the ordinance at issue in *Camara,* § 28–1321 requires probable cause and actual consent before a search may be conducted. *Camara* is therefore distinguishable, and has no bearing on the question of § 28–1321's constitutionality.

574

## CONCLUSION

¶ 26 For the foregoing reasons, we affirm Okken's conviction.